**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **JUSTIN NELSON**, *individually, and on behalf of all others similarly situated*,<br><br>  Plaintiff,<br><br>**v.**<br><br>**OVERBROOK LIFE LLC**,<br><br>  Defendant. | **Case No. 1:26-cv-00374-TDS-LPA** |

**DEFENDANT OVERBROOK LIFE LLC'S**
**REPLY IN SUPPORT OF MOTION TO TRANSFER AND,**
**IN THE ALTERNATIVE, MOTION TO DISMISS**

1

**I.** **THIS CASE SHOULD BE TRANSFERRED TO THE EASTEN DISTRICT OF MICHIGAN ("E.D. Mich."), WHICH HAS THE AUTHORITY TO COMPEL THE NECESSARY WITNESSES TO ATTEND HEARINGS.**

As Plaintiff's Opposition confirms, the parties' competing positions on several dispositive issues raise disputes of fact that will not be resolved on the papers alone. Hearings will likely be necessary to resolve whether (1) Plaintiff's claims are subject to arbitration, (2) Plaintiff (directly or via Ms. Ostrander) consented to receive Overbrook's texts, (3) Plaintiff has Article III standing, and (4) 517-769-XXXX was used for business purposes. As Plaintiff acknowledges, *see* Opp'n. at 20, Ms. Ostrander, Mrs. Nelson, and the Rices are key witnesses for those issues. This Court cannot compel them to attend such hearings and weigh their credibility because they all reside in the E.D. Mich. *See* Federal Rule of Civil Procedure 45(c). The E.D. Mich. is the only court with that authority. This case should be transferred there.

**A.** **Resolving the Opt-In Issue Shows Why This Case Should Be Transferred.**

A dispositive question here is "who actually used 517-769-XXXX" and Ms. Ostrander's name and address "to complete the November 6, 2025 ScoredIt opt-in[.]" Opp'n. at 4, 20. If it was Plaintiff, or Mrs. Nelson or Ms. Ostrander at Plaintiff's instruction, then he agreed to arbitrate his claims and consented to receive Overbrook's texts. Plaintiff's Opposition was his opportunity to deny that it was him or Mrs. Nelson and to disclaim any connection to Ms. Ostrander. Instead, Plaintiff is silent on those issues. His silence speaks volumes.

2

Answering that question will require subpoenaing Jackson, MI residents Mrs. Nelson, Ms. Ostrander, and the Rices for documents, deposing them, and having them attend related hearings and/or trial. Only the E.D. Mich. has jurisdiction over those key witnesses. Thus, the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of witnesses all weigh in favor of transferring this action there. Plaintiff finds no support in *Metz*, where the court found that the "interest of justice factor weigh[ed] in favor of transferring" that case to the S.D.N.Y. because relevant documents were located there. *Metz v. United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009). The case for transfer is even stronger here; unlike movable documents, we have four non-party witnesses who can only be compelled to testify in the E.D. Mich.

Instead of addressing this dispositive issue, Plaintiff instead quibbles with specific language in the opt-in. *See* Opp'n. at 3-8. But that issue is not before this Court because Overbrook has not yet moved to compel arbitration. Even if it was, Plaintiff puts the cart before the horse by attempting to have this Court focus on the arbitration agreement's language before first determining the threshold issue of whether Plaintiff agreed to it. *See IBEW, Local 26 v. Advin Elec.*, 98 F.3d 161, 164 (4th Cir. 1996) (recognizing that "a party cannot be required to submit to arbitration unless he has agreed to do so" (collecting cases)). As explained above, only the E.D. Mich. can fully resolve that contract-formation dispute.

**B. Plaintiff Ignores the Convenience of all Parties and Witnesses.**

Plaintiff's Opposition then focuses on Overbrook's ties to Florida, its organization in North Carolina, and its operations not being in Michigan. *See* Opp'n. at 9-10. But those facts are irrelevant to the issue of why this matter should be transferred to the E.D. Mich. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (noting the inappropriateness of the district court's heavy reliance on the defendant's state of incorporation as grounds for denying its motion to transfer). It is the convenience of both parties to this action, one of which resides in the E.D. Mich., and the necessary non-party witnesses, all of whom also reside there, that warrants transferring this action there. *See Gemini Drilling & Found., LLC v. Balfour Beatty Constr., Inc.*, No. 1:03CV00999, 2004 U.S. Dist. LEXIS 5300, at *2 (M.D.N.C. Feb. 20, 2004) (A court may transfer venue when "a transfer serves the convenience of the witnesses and parties[.]"). Overbrook's witness will have to travel in either case; the deciding factor here is that the E.D. Mich. is the only court that can compel Plaintiff's wife, Ms. Ostrander, and the Rices to testify.

Plaintiff's claim that the E.D. Mich. is not "genuinely more convenient for anyone" here is incorrect, Opp'n. at 1, and his opposition to the transfer of this case to *where he lives* is perplexing. Plaintiff presumably only opposes this transfer to make it as difficult and expensive as possible for Overbrook to obtain information from the identified witnesses and prevent this Court from weighing their testimony in open court.

### C.   Plaintiff's Forum Selection is Not Entitled to Deference.

Finally, Plaintiff incorrectly claims that his selection of this Court is entitled to deference. It is entitled to little or no deference because he seeks to represent a nationwide class; this District has little connection to this matter; and he does not live here. *See Davis v. Stadion Money Mgmt., LLC*, No. 1:19CV119, 2019 U.S. Dist. LEXIS 218959, at *8-9 (M.D.N.C. Dec. 20, 2019) (stating the "usual deference" given to a selected forum "is diminished when the plaintiff is the representative in a class action" and "is further diminished when" that "forum has little connection to the action"); *see also Finkel v. Subaru of Am., Inc.*, No. 3:06CV292, 2006 U.S. Dist. LEXIS 69064, at *15 (E.D. Va. Sept. 26, 2006) (explaining "that deference should only be given to a plaintiff's venue" when he selects his "home forum" (citation omitted)).

## II.   Alternatively, Plaintiff's Claim Must Be Dismissed.

### A.   Subsection 227(c)(5)'s Private Right of Action Does not Extend to Text Messages.

Plaintiff's claims must be dismissed because he only alleges receipt of text messages. As the Seventh Circuit just held, Subsection "227(c)(5)'s private right of action does not extend to unwanted text messages." *See Steidinger v. Blackstone Med. Servs.*, No. 25-2398, 2026 U.S. App. LEXIS 20613, at *9 (7th Cir. July 14, 2026).

In Subsection 227(c)(5), Congress created a private right of action for persons who receive more than one "telephone call" within a 12-month period in violation of FCC regulations prescribed under that 1991 subsection. Here, Plaintiff alleges receipt of text messages, not telephone calls. The TCPA may regulate many forms of communication in

5

different provisions, but Congress did not create a private right of action in Subsection 227(c)(5) for a person's receipt of "messages," "communications," or "telephone solicitations." As the Seventh Circuit just held, Congress chose the narrower phrase "telephone call." Because the term "telephone call" did not encompass "text messages" (or emails, app-based messages, or any other written text people may receive on mobile phones today), Plaintiff's claim is barred.

**1. The Plain Meaning of "Telephone Call" in 1991 did not Include Text Messages.**

Overbrook's Memo, Dkt. No. 12, establishes that the plain text of Subsection 227(c)(5) creates a private right of action only for individuals who receive more than one "telephone call." 47 U.S.C. § 227(c)(5) ("A person who has received more than one *telephone call . . .*" (emphasis added)). The question here is whether text messages fell within the ordinary meaning of the term "telephone call" in 1991. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that . . . **we look to the ordinary meaning of the**" relevant term "**at the time Congress enacted the statute**[.]" (emphasis added) (citation modified)). As numerous courts have now held, the "ordinary public meaning of 'telephone call' in 1991 did not include or embrace a modern text message." *James v. Smarter Contact, Inc.*, No. 8:25-cv-1657-KKM-SPF, 2026 U.S. Dist. LEXIS 68492, at \*6 (M.D. Fla. Mar. 31, 2026).

In 1991, the definition of "telephone" was confined to instruments that transmitted "***sound or speech***." *Id*. (emphasis added) (citations omitted). Thus, reading "telephone" and "call" together yields one answer: "a text message, which does not use a telephone to

6

reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *Id.* at \*6-7; *see Steidinger*, 2026 U.S. App. LEXIS 20613, at \*5 ("in 1991, a 'telephone call' referred to communication via sound"). That answer, which is "supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

> **2.** **Section 227(c)(5)'s Private Right of Action Concerns "Telephone Calls," Not "Telephone Solicitations."**

Plaintiff argues that Subsection 227(c) "prohibits 'telephone solicitations' to numbers on the" NDNCR. Opp'n. at 14. While incorrect as overbroad, that is irrelevant because Congress limited Subsection 227(c)(5)'s private right of action to "telephone calls." Congress deliberately chose *not* to use the term "telephone solicitation," a term it defined in Subsection 227(a), in Subsection 227(c)(5)'s private right of action. Here, this Court need not consider Subsection 227(c)'s relation to telephone solicitations or whether a text message fits within how Congress defined that term because courts operate under the "assumption that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose." *Varn v. Kijakazi*, No. 1:21CV807, 2023 U.S. Dist. LEXIS 29801, \*49 (M.D.N.C. Feb. 22, 2023) (citation omitted); *see Steidinger*, 2026 U.S. App. LEXIS 20613, at \*14 ("the TCPA's remedial nature 'cannot overcome the clear commands of [Subsection 227(c)(5)'s] text and the statutory context.'" (quoting *Facebook, Inc. v. Duguid*, 592 U.S. 392, 406 (2021))).

7

**3.    Plaintiff's Cases are Inapplicable Because They Concern the Use of the Term "Call" Within Subsection 227(b) or Were Wrongly Decided.**

Plaintiff's Opposition incorrectly attempts to replace Congress's phrase "telephone call" in Subsection 227(c)(5) with the broader word "call," and cites cases holding that text messages fall within that term when used as a *verb*.

**a.    No Supreme Court or Fourth Circuit Decision Has Held Subsection 227(c)(5)'s "Telephone Call" Includes Text Messages.**

In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), the Supreme Court merely assumed, in dicta, that a text message "qualifies as a 'call' within the compass of [Subsection] 227(b)(1)(A)(iii)." *Id.* at 156. That dicta does not help Plaintiff here. *See Duguid*, 592 U.S. at 400 & n.2 (acknowledging *Gomez*'s statement as dicta).

Plaintiff's reliance on *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) is misplaced. Whether Subsection 227(c)(5)'s private right of action applies to text messages was neither at issue nor decided there.

**b.    Plaintiff's Authorities Engage in Apples-To-Oranges Comparisons of Different Terms from Different Parts of the TCPA and Disregard the Difference Between the Verb "Call" and the Noun Phrase "Telephone Call."**

Plaintiff's argument blurs the critical distinction between "call" and the narrower statutory phrase "telephone call." A judge might "call" to a law clerk in the next room, but, in 1991 and now, he makes a "telephone call" only by picking up the phone and placing a voice call. That limiting modifier matters because Subsection 227(c)(5) uses "telephone call," not "any call" or "call or message." That distinction is reinforced by Subsection 227(b)(1)(A), where Congress used broader language tied to paging

8

services—technology that could receive nonvoice messages—while Subsection 227(c)(5) uses the narrower phrase "telephone call," confirming that Congress knew how to sweep more broadly when it wished to do so.

As explained in *James*, Congress used "telephone call" there "as a noun," not a verb. 2026 U.S. Dist. LEXIS 68492, at *7. Yet Plaintiff and authorities he cites use the broader verb definition of "call"—"to communicate" or "to get in communication"—to argue that Subsection 227(c)(5) reaches text messages. *Id.* (citation omitted); *see* Opp'n at 14, 16. The question is not what "to call" may mean in action, but what "telephone call" meant in 1991 when Congress enacted Subsection 227(c)(5).

*Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 U.S. Dist. LEXIS 739 (N.D. W.Va. Jan. 5, 2026) illustrates the problem *James* identifies. *Mey* improperly defined the noun "telephone call" using the Ninth Circuit's definition of the verb "to call"—"to communicate with or try to get into communication with a person by telephone." *Id.* at *19 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). But in *Satterfield*, the Ninth Circuit did not interpret Subsection 227(c)(5)'s private right of action or the noun phrase "telephone call." Instead, it analyzed Subsection's 227(b)(1)(A)'s broader "meaning of the verb 'to call,'" defined using a 2002 dictionary. *Satterfield*, 569 F.3d at 953-54. But Subsection 227(c)(5) speaks of receiving "telephone call[s]," not making "any call," and the modifier "telephone" must be given its ordinary 1991 meaning—an act of telephoning through an instrument

that transmitted or reproduced sound, not a written text message. *James*, 2026 U.S. Dist. LEXIS 68492 at *7-9.

Plaintiff's other in-Circuit authorities are not relevant here. *Williams v. Myler Disability, LLC*, is a pre-*Loper-Bright/McLaughlin* decision where whether Subsection 227(c)(5)'s private right of action applies to text messages was not at issue or decided. No.3:20-cv-00275, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020). There is nothing to be gleaned from *McGonigle v. Teleflora LLC*, where the Court merely noted that it was "not persuaded by the defendant's argument[.]" No. 1:25-cv-00807-MSN-WEF (E.D. Va. Mar. 13, 2026), Dkt. No. 67, 18:3-5.

Plaintiff's remaining authorities are irrelevant Subsection 227(b)(1)(A) decisions interpreting the broader phrase "any call," which do not analyze Subsection 227(c)(5)'s noun phrase "telephone call" under *McLaughlin's* ordinary-meaning methodology.[1]

Finally, Plaintiff finds no support in *Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JD, 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026) or *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026). *Taha* traces back to *Satterfield*, 2026 U.S. Dist. LEXIS 54376, at *4-9, and the court in *Alvarez* confused the instrument with the communication, resulting in it wrongly focusing on the fact that a "modern cell phone includes the capabilities of a telephone in 1991[.]" *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625 n.5 (N.D.

---

[1] *See, e.g.*, *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021).

Ohio 2023) (citing *Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *5). These courts failed to address the question that matters: "whether 'call' as modified by 'telephone' in 1991 can include text messages." *Id*. They cannot.

### 4. Congress Never Ratified the FCC's Interpretation.

Lastly, Plaintiff claims that Congress ratified the FCC's interpretation through the 2019 TRACED Act. But as the Seventh Circuit explained in *Steidinger*, Congress did no such thing in relation to Subsection 227(c), because the TRACED Act concerns Subsection 227(b), and those subsections contain "different language[.]" 2026 U.S. App. LEXIS 20613, at *13-14. And the 2019 TRACED Act could not have ratified the FCC's *2023* regulation expanding its DNC rules to text messages, the only "regulation" Plaintiff could be suing for here.

### B. Plaintiff Lacks Article III Standing.

Overbrook's Memo explains that Plaintiff lacks Article III standing here for two reasons: (1) contradictory allegations in the Nelsons' other TCPA complaints prevents Plaintiff from establishing that he received Overbrook's texts and (2) 517-769-XXXX was not subject to 47 C.F.R. § 64.1200's protections when it received Overbrook's texts because it was then used for business purposes. These are 12(b)(1) issues. Thus, Plaintiff's allegations concerning him being 517-769-XXXX's subscriber and it being used only for personal use are "mere evidence on" those issues and this Court "may consider evidence outside the pleadings[.]" *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Plaintiff wrongly claims that they "must

be accepted as true" at this stage. Opp'n. at 18, 21. Instead, the Court "weighs the evidence to determine its jurisdiction" and the burden is on Plaintiff. *Arnold v. United States*, No. 94-1548, 1994 U.S. App. LEXIS 30439, at *9-10 (4th Cir. Oct. 21, 1994) (citation omitted). Plaintiff's allegations can be and have been rebutted in Overbrook's Memo. Plaintiff failed to carry his burden.

### 1. Plaintiff Cannot Overcome the Contradictory Allegations Concerning the Subscriber and Primary User of 517-769-XXXX.

Plaintiff relies on *Krakauer* in attempting to establish himself as the recipient of Overbrook's texts. But Plaintiff finds no support there. First, Plaintiff's Opposition fails to reckon with the Nelsons' contradictory allegations in their other TCPA complaints concerning both who was/is the subscriber and the primary user of 517-769-XXXX. *See* Memo at 4-6. Those contradictory allegations raise a real possibility that Mrs. Nelson was both the subscriber/owner and primary/customary user of 517-769-XXXX in November 2025, and thus the only possible recipient of Overbrook's texts. Plaintiff's self-serving declaration does not adequately explain or address these contradictory allegations and, tellingly, Mrs. Nelson did not submit her own declaration.

Second, *Krakauer*'s dicta concerning "a home telephone number" is irrelevant here because 517-769-XXXX is a cellular telephone number. *Krakauer*, 925 F.3d at 657; *see* Compl. ¶ 12. Such numbers differ from home telephone numbers because they are intended to have just one primary/customary user. This holds true here. At least in November 2025, Mrs. Nelson was the primary/customary user of 517-769-XXXX and

Plaintiff was the primary/customary user of 517-750-XXXX. *See* Memo Exhibit A ¶ 12; Exhibits G and H.

Plaintiff's Opposition addresses that every "T-shirt photograph and social-media post" Overbrook cited in support of its argument that 517-769-XXXX was used for business purposes "was authored by Mrs. Nelson, not Plaintiff." Opp'n. at 22. That fact *supports* Mrs. Nelson being the primary/customary user of 517-769-XXXX when it received Overbrook's texts. Why else would she repeatedly advertise 517-769-XXXX as her business's telephone number?

### 2. 517-769-XXXX Was Used for Business Purposes in November 2025.

Plaintiff's Opposition focuses on 517-769-XXXX's use before and after its receipt of Overbrook's texts to argue it was used for personal purposes. *See* Opp'n. at 21-22. But all that matters here is how 517-769-XXXX was used in November 2025, when it received Overbrook's texts. Photographs and social media posts "authored by Mrs. Nelson," Opp'n. at 22, establish that 517-769-XXXX was used for business purposes then. Plaintiff's own declaration acknowledges that 517-769-XXXX was "associated with JCHU." Plaintiff's Declaration ¶ 14. Regardless of whether that association was temporary, it existed in November 2025. That is enough to bar Plaintiff's claim.

### C. Plaintiff Was Required to Personally Register 517-769-XXXX.

While *Rombough* represents the minority view that a plaintiff personally registering the called number on the NDNCR is a necessary element of a 47 C.F.R. § 64.1200(c)(2) claim, *Rombough* has the better of it. Its interpretation honors the Supreme

13

Court's interpretive standards in *McLaughlin* and *Loper-Bright* and 47 C.F.R. § 64.1200(c)(2)'s plain language.

## III. CONCLUSION

The Court should transfer this matter to the E.D. Mich. Alternatively, it should dismiss Plaintiff's Complaint.

This the 27th day of July, 2026.

/s/ S. Wilson Quick
S. Wilson Quick
N.C. State Bar No. 47725
wquick@brookspierce.com

Michael B. Jones
N.C. State Bar No. 63595
mjones@brookspierce.com

BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
P.O. Box 1800
Raleigh, NC 27602
Telephone: 919-839-0300
Facsimile: 919-839-0304

*Attorneys for Defendant Overbrook Life, LLC*

14

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief, including headings and footnotes, contains 3,114 words based on the word count feature of Microsoft Word, excluding the case caption and signature block.

Dated: July 27, 2026

/s/ S. Wilson Quick
S. Wilson Quick